IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLEN HOLLIDAY,

    Plaintiff,

v.

BOARD OF EDUCATION FOR
ANNE ARUNDEL COUNTY,

    Defendant.

Civil Action No. RDB-17-0847

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Allen Holliday ("Plaintiff" or "Holliday"), an African-American male, filed this four-count Complaint against Defendant Board of Education for Anne Arundel County ("Board" or "Defendant"), asserting claims for retaliation, breach of contract, and declaratory judgment stemming from his filing of charges of discrimination with the Maryland Commission on Civil Rights ("Commission") and U.S. Equal Employment Opportunity Commission ("EEOC"). (Second Am. Compl., ECF No. 13-1.) Currently pending before this Court is Defendant's Motion to Dismiss the Amended Complaint (ECF No. 8),[1] Plaintiff's Motion to Strike the Reply to the Response (ECF No. 11), and Plaintiff's Motion for Leave to file a Second Amended Complaint (ECF No. 13). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Plaintiff's Motion for Leave to file a Second Amended

---

[1] Also still pending is Defendant's Motion to Dismiss the Original Complaint (ECF No. 4). This Motion is DENIED as MOOT.

1

Complaint (ECF No. 13) is GRANTED and Plaintiff's Motion to Strike the Reply to the Response (ECF No. 11) is DENIED. Further, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 8) is DENIED IN PART and GRANTED IN PART.[2] Specifically, this Court denies Defendant's Motion as to Counts I-III but grants Defendant's Motion as to Count IV.

## BACKGROUND

When reviewing a Motion to Dismiss, this Court accepts as true the facts alleged in Plaintiff's Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (2011). Plaintiff Allen Holliday, an African-American male, has been a maintenance mechanic with the Anne Arundel County school system since 2010. (Second Am. Compl., ECF No. 13-1 at ¶¶ 2-4, 15.) The maintenance department has over twenty maintenance staff. (*Id.* at ¶ 16.) Plaintiff claims that at the time of his hire and throughout his first year, he noticed that more African-American employees were tasked with roof work than white employees, a harder assignment due to elevated height, dirty materials, and exposure to the elements (*Id.* at ¶¶ 17-18.) Further, he noticed that promotion practices favored white employees. (*Id.* at ¶ 20.) When Holliday complained about these alleged unfair practices, he claims that he "did not get help," but rather became known as a trouble maker and one who complained about discriminatory work environment. (*Id.* at ¶¶ 21-23.) In addition to complaining about unfair practices generally, Plaintiff also made a complaint alleging that he himself was denied a promotion due to his race. (*Id.* at ¶ 22.) In 2013, he filed a Charge of racial discrimination with the Maryland Commission on Civil Rights ("Maryland Commission") about the racially

---
[2] As explained below, this Court applies Defendant's Motion to Dismiss the Amended Complaint to Plaintiff's Second Amended Complaint.

discriminatory practices ("2013 Charge"). (*Id.* at ¶ 24.)

Sometime after Plaintiff filed the 2013 Charge, the Maryland Commission conducted an onsite investigation which involved interviewing five to six of Holliday's co-workers. (*Id.* at ¶ 26.) After the investigation, a co-worker told Plaintiff that he was upset Plaintiff filed the 2013 Charge, Plaintiff heard gossip about the Charge, and Plaintiff "began to receive regular dirty looks and also received verbal threats." (*Id.*) Further, Plaintiff claims that while at headquarters, groups of co-workers yelled "snitch" at him numerous times. (*Id.* at ¶ 27.) Plaintiff also heard co-workers say "snitches get stitches." (*Id.* at ¶ 28.) At a departmental meeting in 2015, a co-worker went as far to write "Snitch's Get Stiches [sic]" on the meeting board. (*Id.* at ¶ 29.) A presiding manager who was present at the meeting did nothing in response. (*Id.* at ¶¶ 31-32.) Plaintiff subsequently complained about this "written retaliatory public threat" to his supervisor. (*Id.* at ¶ 33.)

Around the summer of 2015, Plaintiff was removed from his maintenance positon and put on a floor crew. (*Id.* at ¶ 36.) In his experience, those working floor crew had a substantial background in the work, which Plaintiff did not. (*Id.* at ¶ 42.) When he asked why he was transferred, a manager told him that it was in part because he had signed up for a particular shift schedule. (*Id.* at ¶ 37.) Plaintiff told both his supervisors and an individual in Human Resources that he never signed up for the particular shift and that he did not want to be assigned to floor crew. (*Id.* at ¶ 38.) Despite his objections, he remained on floor crew. (*Id.* at ¶ 39.) Due to the nature of the work, Plaintiff claims that he started noticing knee problems, including bilateral knee osteoarthritis and/or right knee medial meniscus. (*Id.* at ¶¶ 43-44.) He brought in doctors' notes to substantiate these injuries and support his requests

3

to be moved off of floor crew. (*Id.* at ¶ 45.) Despite his repeated requests, Plaintiff worked on floor crew through March of 2016. (*Id.* at ¶ 46.)

During his time in this assignment, Plaintiff claims that he was harassed by two, Caucasian onsite supervisors, one of which had been interviewed by the Maryland Commission related to Plaintiff's 2013 Charge. (*Id.* at ¶ 47.) The harassment consisted of the supervisors leaving banana peels and chicken bones on the hood of Plaintiff's vehicle up to ten times in 2015 and 2016, which Plaintiff understood as racist, taunting symbols. (*Id.* at ¶¶ 47-52.) Because his vehicle was parked in public areas or at public school facilities, the "symbolic harassment and litter" was visible to the public, including children. (*Id.* at ¶ 52.) Plaintiff claims that this "retaliatory hostile work environment altered the conditions of employment and made it difficult to work, to succeed, and to maintain employment." (*Id.* at ¶ 53.) In 2016, Plaintiff's knee condition worsened and caused him to quit his second, part-time job. (*Id.* at ¶ 56.) In addition, during all of this time he claims that he was denied opportunities to work overtime. (*Id.* at ¶ 58.)

On March 11, 2016, Plaintiff filed a second charge with the Maryland Commission on Civil Rights and U.S. Equal Employment Opportunity Commission for retaliation, racial discrimination, and disability discrimination ("2016 Charge"). (ECF No. 5-2.) In May of 2016, the Plaintiff and Defendant entered into a Pre-Determination Settlement Agreement ("the Agreement").[3] (ECF No. 5-1.) On March 29, 2017, Plaintiff brought the instant suit alleging retaliation under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and Maryland Fair Employment Practices Act ("FEPA"), Md. Code, State Gov't §§

---

[3] As explained below, the parties dispute whether the Settlement Agreement pertains solely to the 2013 Charge or also the 2016 Charge.

20-266(a) (Counts I, II); breach of contract (Count III); and seeking a declaratory judgment (Count IV). After Defendant filed a Motion to Dismiss (ECF No. 4), Plaintiff filed an Amended Complaint, (ECF No. 5). Defendant subsequently filed a Motion to Dismiss the First Amended Complaint (ECF No. 8), to which Plaintiff filed a Response (ECF No. 9) and Defendant a Reply to the Response (ECF No. 10). Currently pending before this Court is Defendant's Motion to Dismiss the Amended Complaint (ECF No. 8), Plaintiff's Motion to Strike the Reply to the Response (ECF No. 11), and Plaintiff's Motion for Leave to file a Second Amended Complaint (ECF No. 13), which Defendant opposes (ECF No. 14).

**STANDARD OF REVIEW**

I. **Motion to Amend**

A plaintiff may amend his or her complaint once "as a matter of course at any time before a responsive pleading is served" or "by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Rule 15(a) requires that leave "shall be freely given when justice so requires." *Id.* The United States Court of Appeals for the Fourth Circuit has held that Rule 15 "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Notwithstanding this liberal standard, a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc. - the leave sought should, as the rules require, be 'freely given.'"). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Harvey*, 438 F.3d at 427.

## II. Motion to Dismiss

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6), which authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

## ANALYSIS

### I. Motion to Amend

Holliday filed the initial complaint on March 29, 2017. (ECF No. 1.) After Defendant filed a Motion to Dismiss, he filed an Amended Complaint on July 14, 2017. (ECF No. 5.) Defendant subsequently filed a Motion to Dismiss the Amended Complaint (ECF No. 8), Plaintiff filed a Response (ECF No. 9), and Defendant filed a Reply to the Response (ECF

No. 10.) Plaintiff then filed a Motion to Strike Defendant's Reply to the Response, "for introducing new legal argument in a filed Reply without Plaintiff having an ability to respond." (ECF No. 11.) Specifically, Plaintiff alleges that Defendant argued for the first time that certain factual allegations supporting Plaintiff's retaliation claims are statutorily time barred. (*Id.*) On September 14, 2017, Plaintiff also filed a Motion to file a Second Amended Complaint for similar reasons, explaining that the Second Amended Complaint does not add any new legal claims but rather addresses Defendant's statute of limitations argument by distinguishing certain time periods. Defendant argues that there is no legal basis to strike the Reply or amend the pleadings.

The Second Amended Complaint adds no new legal claims, but rather adds labels to certain sections of the Complaint in order "to separate the background facts before the actionable period, from the actionable facts." (ECF No. 13 at 2.) In addition, discovery has not commenced in this case given that it is at the motion to dismiss stage. Accordingly, the amendment will not be prejudicial to the Defendant. Further, the record shows no bad faith on behalf of Plaintiff and as explained below, the amendment is not futile given that this Court is denying Defendant's Motion to Dismiss Plaintiff's retaliation and breach of contract claims. *See Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (explaining that a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile"). Accordingly, Plaintiff's Motion for Leave to file a Second Amended Complaint is (ECF No. 13) is GRANTED and Plaintiff's Motion to Strike the Reply to the Response (ECF No. 11) is DENIED.

7

II. **Motion to Dismiss**

   a. **Effect of the Second Amended Complaint**

"As a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000)). Accordingly, a court may then deny a motion to dismiss the original pleading as moot. *Turner v. Knight*, 192 F.Supp.2d 391, 397 (D. Md. 2002). Notwithstanding this general rule:

> [D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.

6 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1476 (3d ed. 2014); *see also Buechler v. Your Wine & Spirits Shoppe, Inc.*, 846 F.Supp.2d 406, 415 (D. Md. 2012), *aff'd*, 479 Fed. App'x. 497 (4th Cir. 2012).

As explained above, Plaintiff's Second Amended Complaint does not add any new legal arguments, but rather introduces labeling to nearly identical fact sections. Accordingly, the defects Defendant alleges are contained in Plaintiff's Amended Complaint apply equally to the Second Amended Complaint, and this Court will apply Defendant's arguments in its Motion to Dismiss the Amended Complaint to the Second Amended Complaint.

   b. **Retaliation claims (Counts I, II)**

Defendant moves to dismiss Plaintiff's retaliation claims on two grounds. First, Defendant argues that Holliday waived his right to file these claims by entering into the Pre-Determination Settlement Agreement ("the Agreement"). Second, Defendant also argues

that Plaintiff has failed to establish a *prima facie* case of retaliation. This Court addresses these arguments in turn.

i. The May 2016 Agreement does not bar Plaintiff's claims

Defendant's first argument is that by entering into the Agreement in May of 2016, Plaintiff waived his right to bring the instant claims related to his 2016 Charge. The Agreement entered into on May 11, 2016 identifies the relevant complaints of discrimination as Plaintiff's 2013 Charges filed with the EEOC and Maryland Commission. (ECF No. 5-1.) Two provisions of the Agreement state:

> 2. The execution and implementation of this Agreement shall have no effect upon the handling or disposition of any other complaints of discrimination filed with the Federal Government or the Commission nor before any other tribunal.
> . . .
> 7. The Complainant hereby waives, releases and covenants not to sue or prosecute further charges against the Respondent with respect to any matters which were or might have been alleged as charges filed with the Commission in the instant case . . ..

Defendant argues that Section 7's language "with respect to any matters which were or *might have been alleged*" precludes Plaintiff's instant retaliation claims because they are based on allegedly retaliatory actions that occurred prior to May 11, 2016. Accordingly, the actions "might have been alleged" by amending the 2013 Charge. Plaintiff argues, however, that his claims are not barred under Section 2's language that "this Agreement shall have no effect upon . . . any other complaints of discrimination." Applying Maryland's "objective law of contract interpretation and construction," *Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 496 (2005), Plaintiff did not waive his right to bring the instant retaliation claims.

Plaintiff's 2013 Charge claimed that he was denied a promotion due to his race. (ECF

9

No. 14 at ¶¶ 22, 24.) The Agreement twice specifically references the case numbers for the 2013 Charges with the EEOC and Maryland Commission. Specifically, in one of the provisions Plaintiff agrees that he will request the closure of the 2013 Charges with both commissions. (ECF No. 5-1 at ¶¶ 8-9.) Further, the Agreement provides settlement terms related to the failure to promote. By entering into the Agreement, Defendant agreed to promote Plaintiff to Lead General Maintenance Mechanic, increase his pay, and pay Plaintiff back-pay. (*Id.* at 3.) In contrast, Plaintiff's 2016 Charge concerns race discrimination and the instant claims of retaliation. (ECF No. 5-2 at 2, 3.) Section 7 only mandates waiver of charges "with respect to any matters which were or might have been alleged as charges . . . in the *instant* case." The "instant case" clearly covered the 2013 Charge that the Agreement referenced. However, it does not reference the 2016 Charge which Plaintiff had already filed at the time the parties entered into the Agreement. Further, the claims in the 2016 Charge differ from the "instant [2013] case." Section 2 then states that the Agreement "shall have no effect upon the handling or disposition of any other complaints of discrimination." Accordingly, reading the Agreement as a whole, it does not bar Plaintiff's instant claims related to his 2016 Charge.[4]

### ii. Plaintiff has sufficiently alleged a claim for retaliatory hostile work environment

Plaintiff brings retaliation claims pursuant to both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code, State Gov't §§ 20-266(a). As this Court has consistently held, claims

---

[4] Although the record shows that Plaintiff is not barred from bringing the instant claims, as discussed below this Court denies Plaintiff's related request for a declaratory judgment on this issue.

10

under Maryland's Fair Employment Practices Act are to be interpreted consistently with Title VII. *Schmidt v. Town of Cheverly, Md.*, 212 F.Supp.3d 573, 579 (D. Md. 2016); *Finkle v.Howard Cty., Md.*, 12 F.Supp.3d 780, 784 (D. Md. 2014). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show (1) that he or she engaged in a protected activity; (2) that he or she suffered an adverse employment action; and (3) a causal link between the protected activity and the employment action. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Plaintiff clarifies in his Response to Defendant's Motion to Dismiss that his retaliation claim is based on hostile work environment, or his claim is one for "retaliatory hostile work environment."[5]

Before proceeding to the merits of Plaintiff's retaliation claim, however, Defendant argues that any alleged harassment prior to June of 2015 is time barred and therefore unable to support Plaintiff's retaliation claims. (ECF No. 10 at 4.) A plaintiff must meet certain statutory requirements before bringing a Title VII discrimination claim in federal or state court. One of those requirements is that a plaintiff file a "charge" of discrimination with the EEOC or appropriate agency within a specified time "after the alleged unlawful employment practice occurred." *Id.* In Maryland, a deferral state,[6] a Title VII claim of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory action. *EEOC v. R & R Ventures*, 244 F.3d 334, 338 n.1 (4th Cir. 2001). Accordingly, only alleged retaliatory action occurring within that 300 day window is timely claimed.

---

[5] The United States Court of Appeals for the Fourth Circuit first recognized this cause of action in *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001). (ECF No. 9-1 at 3-10.)
[6] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). Maryland is classified as a deferral state due to the Maryland Commission on Human Relations (MCHR), a state agency that is capable of providing relief from discrimination.

Plaintiff filed the Amended Charge, the only Charge attached to his submissions, on April 18, 2016. Therefore, the general rule is that only alleged retaliatory action occurring after June 23, 2015 may support his retaliation claims.[7] However, the continuing violation doctrine "permits 'incidents outside of the statutory period to survive if they relate to a timely incident as a series of separate but related acts amounting a continuing violation.'" *Karim v. Staples*, 210 F.Supp.2d 737, 749 (D. Md. 2002) (quoting *Lambert v. Washington Suburban Sanitary Comm'n*, 93 F.Supp.2d 639, 642 (D. Md. 2000) (internal quotations omitted)). The United States Supreme Court has explicitly applied this doctrine to hostile work environment claims, noting that "[a] charge alleging a hostile work environment . . . will not be time barred as long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061 (2002). This doctrine developed because the "unlawful employment practice" for hostile work environment claims "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115, 122 S.Ct. 2016; *see also Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 223 (4th Cir. 2016) ("[H]ostile work environment claims under Title VII are also subject to the 'continuing violation' theory for establishing limitations periods which can make the defendant liable for conduct occurring prior to the statutory period as well."). The Complaint alleges a "pattern of activity" that Plaintiff claims constituted a retaliatory

---

[7] While an amended charge can relate back to the date when the original charge was filed if certain circumstances are present, 29 C.F.R. § 1601.12, Plaintiff has not provided this Court with a copy of the original charge to make such an assessment. Additionally, as explained below, given that the continuing violation doctrine applies, this Court will consider events that occurred prior to June 23, 2015.

12

work environment. (ECF No. 9-1 at ¶ 4.) Accordingly, because at least one of the acts contributing to Plaintiff's claim falls within the 300 day window, namely on-site supervisors leaving banana peels and chicken bones on Holliday's vehicle, this Court may consider actions that occurred prior to June 23, 2015 which Plaintiff claims contributed to a hostile work environment. (ECF No. 13-1 at ¶ 49.)

Turning to whether Plaintiff has made a *prima facie* case for retaliation, Defendant does not dispute that Holliday engaged in a protected activity, the filing of the 2013 Charge. Beginning, then, with the second element of adverse employment action, a hostile work environment may satisfy this prong of a retaliation claim if the plaintiff shows that the "hostile work environment amount[ed] to a *materially adverse* employment action." *Fordyce v. Prince George's County Maryland*, 43 F.Supp.3d 537, 552 (D. Md. 2014) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405 (2006)) (emphasis in original). "Materiality is an objective determination, meaning that '[a]cts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects may be considered adverse actions, although a mere inconvenience or an alteration of job responsibilities[ ] will not suffice.'" *Id.* (quoting *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010)). The Supreme Court instructed lower courts to consider "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Morgan*, 536 U.S. at 116, 122 S.C. 2061 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367 (1993)).

Under the totality of the circumstances, Plaintiff has pled a hostile work environment.

13

Plaintiff alleges that after the Commission began investigating his 2013 Charge, he was referred to as a "snitch" and told "snitches get stitches" numerous times. In addition, when he walked into a departmental meeting in 2015, a co-worker had written "Snitches get Stiches [sic]" on the whiteboard. The presiding manager who was present did nothing. Plaintiff alleges that he "felt shock and fear and humiliation" and later complained to a supervisor about the incident. Around that time, he was transferred to floor work, which he alleges occurred despite his objections and the injuries he developed, which he substantiated with doctors' notes. Further, it was in this involuntary placement in floor work that he began being harassed by onsite supervisors. *See Westmoreland v. Prince George's County, Md.*, 876 F.Supp.2d 594, 616 (D. Md. 2012) (considering whether a transfer of assignments was more than a minor inconvenience, undesirable, and not an isolated act). Specifically, these supervisors placed banana peels and chicken bones on Plaintiff's vehicle up to ten times.[8] As the Fourth Circuit has explained, "[t]o suggest that a human being's physical appearance is essentially a caricature of a jungle beast goes far beyond the merely unflattering; it is degrading and humiliating in the extreme." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001). In total, Plaintiff claims that the snitch and banana and chicken bone incidents occurred around twenty separate times from 2015 to March of 2016. Given the severity of the conduct, the time span it covered, and Plaintiff's allegations that he felt both fear and humiliation, he has made a plausible claim that he experienced adverse employment action in the form of a hostile work environment.

---

[8] Defendant raises the argument that "an employer is liable for harassment by the victim's coworkers only 'if it knew or should have known about the harassment and failed to take effective action to stop it.'" *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008). However, the individuals committing the vandalism were not merely coworkers; they were Plaintiff's onsite supervisors. In addition, the vandalism occurred over a span of time and in public locations.

Defendant also argues that Plaintiff cannot show causation, the third element necessary to make a *prima facie* case of retaliation. The protected activity occurred when Plaintiff filed the 2013 Charge. It was not until 2015, however, when the "Snitch's Get Stiches [sic]" incident occurred at the departmental meeting .(*Id.* at 29.) Subsequent to that, Plaintiff was transferred to floor work, where the banana and chicken bone incidents began occurring. Defendant argues causation is therefore lacking because there is no temporal proximity between the filing of Plaintiff's 2013 Charge and these incidents. However, as the Fourth Circuit explained, "[i]n cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). After Plaintiff filed his 2013 Charge, the Commission began investigating in 2014. It was after the investigation began that Holliday claims he began hearing gossip about the 2013 Charge and receiving dirty looks and verbal threats. (ECF No. 13-1 at ¶ 26.) It was also around this time that Plaintiff alleges that co-workers yelled "Snitch!" to him numerous times and also "snitches get stitches." (*Id.* at ¶¶ 27-28.) Accordingly, the record shows evidence of retaliatory animus during the intervening period between Plaintiff filing his Charge and the incidents supporting his hostile work environment claim.[9] Therefore, Plaintiff has sufficiently alleged causation between his protected activity and hostile work environment, and therefore set out a plausible claim for relief for retaliatory hostile work environment.

---

[9] In Defendant's Reply to Plaintiff's Response, Defendant also argues that "Plaintiff alleges that he suffered this mistreatment because of his race, not because the filed the 2013 charge." (ECF No. 10 at 5.) However, Defendant overlooks the fact that Plaintiff's 2013 Charge was for racial discrimination.

### c. Breach of Contract (Count III)

Plaintiff also brings a breach of contract claim under Maryland law against Defendant, alleging that Defendant breached an obligation of the Pre-Determination Settlement Agreement. (ECF No. 5.) Provision five of the Agreement states that the Respondent, the Defendant Board, "agrees not to engage in, or allow any of its employees to engage in any conduct against the Complainant," Plaintiff, "the nature of which conduct is retaliatory." (ECF No. 5-1 at ¶ 5.) Plaintiff alleges that his car was keyed in the work parking lot within several days of filing the instant Complaint in this Court. (ECF No. 13-1 at ¶ 85.) Further, that despite his requests, Defendant has not provided Plaintiff with any evidence of an investigation into the incident, and this failure is in breach of the Agreement. (*Id.* at ¶¶ 89-91.) In its Motion to Dismiss, Defendant argues that its obligation under the Agreement to refrain or protect Plaintiff from retaliatory conduct incorporates the statutory anti-retaliation requirements, including the requirements of protected activity and materially adverse action.

At this stage in the proceedings, Plaintiff has pled a plausible claim for breach of contract. There is no dispute that Defendant and Plaintiff entered into the Agreement, by which Defendant agreed "not to engage in, or *allow any of its employees to engage in any conduct against the Complainant . . .* the nature of which conduct is retaliatory." (ECF No. 5-1 at ¶ 5) (emphasis added). There is nothing in the Agreement that indicates that the language "conduct is retaliatory" means that Defendant is only obligated to not engage in or to prevent employees from engaging in conduct that can meet a *prima facie* case for retaliation. A few days after filing a Complaint in this Court, Plaintiff's car was keyed while on work property, and Defendant has allegedly done nothing in response. These facts are sufficient to

state a claim for breach of contract, and accordingly, Defendant's Motion is denied as to Count III.

### d. Declaratory Judgment (Count IV)

Finally, Plaintiff seeks a declaratory judgment under 28 U.S.C. §§ 2201, 2202 that the Pre-Determination Settlement Agreement does not bar his instant claims stemming from his 2016 Charge. As this Court explained in *Chaghervand v. CareFirst*, 909 F.Supp. 304 (D. Md. 1995):

> Declaratory judgment is appropriate when there is an actual case or controversy between the parties, and the declaration will finally resolve the case or controversy. *American Ins. Co., et al. v. Lester, et al.,* 214 F.2d 578, 582 (4th Cir.1954). Judgment may be refused, however, when it is "not necessary or proper at the time under all the circumstances." *Aetna,* 92 F.2d at 325.

*Id.* at 313; *see also Pitrolo v. County of Buncombe, N.C.*, 589 Fed. App'x. 619 (4th Cir. 2014) At the outset, granting Plaintiff the declaratory judgment he seeks would not finally resolve the case or controversy by the parties, as indicated by Defendant's alternative ground for dismissal that Plaintiff failed to state a claim. In addition, as explained above, this Court denies Defendant's Motion to Dismiss because the Agreement does not bar Plaintiff's instant suit and he has adequately plead a claim for retaliatory hostile work environment. Accordingly, issuing the declaratory judgment Plaintiff requests is also not necessary. Therefore, Plaintiff's request for a declaratory judgment is DENIED and Count IV is DISMISSED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss the Original Complaint (ECF No. 4) is DENIED as MOOT. Plaintiff's Motion for Leave to file a Second Amended

Complaint (ECF No. 13) is GRANTED and Plaintiff's Motion to Strike the Reply to the Response (ECF No. 11) is DENIED. Further, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 8) is DENIED IN PART and GRANTED IN PART. Specifically, this Court denies Defendant's Motion as to Counts I-III but grants Defendant's Motion as to Count IV.

A separate Order follows.

Dated: December 13, 2017

                                                                      /s/_____
Richard D. Bennett
United States District Judge